David H. Stern (SBN 196408)
Alex E. Spjute (SBN 229796)
Jennifer F. Delarosa (SBN 312110)
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone:  310.820.8800
Facsimile:  310.820.8859
Email:     *dstern@bakerlaw.com*
           *aspjute@bakerlaw.com*
           *jdelarosa@bakerlaw.com*

*Attorneys for Defendant*
San Diego Dialysis Services, Inc.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVAN WATSON, an individual, on behalf of herself and on behalf of all persons similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>SAN DIEGO DIALYSIS SERVICES, INC., a Corporation; and DOES 1 through 50, inclusive,<br><br>*Defendants*. | Case No.: **'24CV0228 BEN JLB**<br><br>*[San Diego County Superior Court Case No. 37-2023-00048609-CU-OE-CTL]*<br><br>**DEFENDANT'S NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**<br><br>*[Filed concurrently with Declaration of Martha D'Sanchez; Civil Cover Sheet; Corporate Disclosure Statement; and Notice of Party With Financial Interest]*<br><br>Action Filed:   11/07/2023<br>Removal Filed:  02/02/2024 |

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, Defendant SAN DIEGO DIALYSIS SERVICES, INC. ("Defendant") hereby removes the action filed by Plaintiff DEVAN WATSON ("Plaintiff") in the Superior Court of the State of California for the County of San Diego, captioned *Watson v. San Diego Dialysis Services, Inc.*, Case No. 37-2023-00048609-CU-OE-CTL, to the United States District Court for the Southern District of California.

## I.

## BACKGROUND

1. This is a wage and hour case. On November 7, 2023, Plaintiff filed a putative class action complaint against Defendant in the Superior Court of the State of California for the County of San Diego, captioned *Watson v. San Diego Dialysis Services, Inc.*, Case No. 37-2023-00048609-CU-OE-CTL (the "Complaint"). Defendant was served with the Summons and Complaint on January 4, 2024. True and correct copies of the Summons and Complaint served upon Defendant are attached hereto as **Exhibit 1** and **Exhibit 2**, respectively.

2. Defendant filed and served its Answer to the Complaint on February 1, 2024. A true and correct conformed copy of Defendant's Answer is attached hereto as **Exhibit 3**.

3. The Complaint asserts nine causes of action, all brought as class claims, based on alleged violations of California wage and hour laws, namely: (1) violation of Cal. Lab. Code §§ 204, 1194, 1194.2, and 1197 (unpaid minimum and straight time wages), (2) violation of Cal. Lab. Code §§ 1194 and 1198 (unpaid overtime wages), (3) violation of Cal. Lab. Code §§ 226.7 and 512 (failure to provide meal periods), (4) violation of Cal. Lab. Code § 226.7 (failure to authorize and permit rest periods), (5) violation of Cal. Lab. Code §§ 201-203 (failure to timely pay final wages at termination), (6) violation of Cal. Lab. Code § 226 (failure to provide accurate itemized wage statements), (7) violation of Cal. Lab. Code § 2802 (failure to

DEFENDANT'S NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT
4860-7239-7216

reimburse business expenses), (8) violation of Cal. Lab. Code § 233, 246 (failure to pay proper sick pay), and (9) violation of Cal. Bus. & Prof. Code § 17200 *et seq.* (unfair business practices premised on the above alleged Labor Code violations).

4. By her Complaint, Plaintiff, on behalf of the putative class and subclass, asserts that she and the class and subclass are entitled to, among other things, an award of compensatory damages, liquidated damages, penalties, restitution to the class, prejudgment interest on all damages awarded, attorneys' fees and costs, and such other and further relief as the Court deems proper. (Complaint Prayer for Relief.)

## II.

## **REMOVAL UNDER CAFA IS APPROPRIATE**

5. This is a civil action over which this Court has original subject matter jurisdiction under 28 U.S.C. § 1332(d), and removal is proper under 28 U.S.C. §§ 1441 and 1446 because it is a civil action that satisfies the requirements stated in the Class Action Fairness Act of 2005 ("CAFA"). *See* 28 U.S.C. § 1332(d) & 1453). CAFA extends federal jurisdiction over class actions where (1) any member of a class of plaintiffs is a citizen of a State different from any defendant, (2) the putative class consists of more than 100 members, and (3) the amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d). This includes any class action filed under Federal Rule of Civil Procedure 23 or "similar State statute or rule of judicial procedure," such as California Code of Civil Procedure § 382. 28 U.S.C. § 1332(d)(1)(B); *see also* Complaint ¶¶ 28, 30, 36-38, 40, 46-48 & Prayer for Relief. As set forth below, each of these CAFA requirements are readily satisfied.

6. Because CAFA was enacted to facilitate federal courts' adjudication of certain class actions, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014); *see also Jordan v. Nationstar Morg. LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015) (reversing

remand order "[i]n light of the Supreme Court's clear statement in *Dart Cherokee* that Congress intended for no antiremoval presumption to attend CAFA cases").

### A.  Minimal Diversity Is Satisfied

7.  While diversity removal normally requires complete diversity between plaintiffs and defendants, removal of a class action under CAFA only requires "minimal diversity", i.e., that at least one member of a class of plaintiffs be diverse from one defendant. *See* 28 U.S.C. § 1332(d)(2)(A).  This requirement is readily satisfied here.

8.  <u>Plaintiff's Citizenship</u>.  Although Plaintiff alleges she worked for Defendant in California from May 2022 to December 24, 2022 (Complaint ¶¶ 3, 29), Plaintiff then moved to Arizona and transferred from working for Defendant to an affiliated company.  (Declaration of Martha D'Sanchez ("D'Sanchez Decl.") ¶ 11.) Plaintiff is therefore a citizen of Arizona.  (*See id.*)  For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  Residence is prima facie evidence of domicile.  *See, e.g., District of Columbia v. Murphy*, 314 U.S. 441, 455 (1941); *State Farm Mutual Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994). Accordingly, because Plaintiff resides in Arizona, Plaintiff is a citizen of Arizona.

9.  Moreover, the vast majority of the other putative class members are citizens of California, who have worked for the alleged Defendant within California. (*See* Complaint ¶ 4 (defining proposed "CALIFORNIA CLASS" to include "[a]ll individuals who are or previously were employed by DEFENDANT in California . . .").)

10.  <u>Defendant's Citizenship</u>.  Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  A corporation's "principal place of business", or its so-called "nerve center", is "where a corporation's officers direct, control, and coordinate the corporation's activities."

*Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) (rejecting all prior tests in favor of the "nerve center" test). "[I]n practice," a corporation's "nerve center" should "normally be the place where the corporation maintains its headquarters." *Id*.

11. Here, Defendant is a Delaware corporation that maintains its principal place of business in Waltham, Massachusetts. (D'Sanchez Decl. ¶ 4.) Pursuant to the *Hertz* nerve center test, Defendant's nerve center is in Massachusetts because its headquarters are located in Massachusetts, it maintains its administrative offices, corporate records, and files in Massachusetts, and most of its corporate officers reside in Massachusetts. (*Id.*) The overall day-to-day operational, financial, and accounting decisions required for Defendant's business are the responsibility of personnel located in Massachusetts. (*Id.*) Accordingly, for purposes of diversity, Defendant is a citizen of Delaware and Massachusetts—not California.

12. Minimal diversity of citizenship exists under CAFA because Plaintiff (who is a member of the putative class) is a citizen of California, and Defendant is a citizen of Delaware and Massachusetts. Therefore, at least one plaintiff is a citizen of a different state than at least one defendant, satisfying CAFA's minimal diversity requirement. *See* 28 U.S.C. § 1332(d)(2)(A).

**B.     The Putative Class Exceeds 100 Members**

13. Plaintiff purports to bring this action on behalf of herself and "all individuals who were or previously were employed by DEFENDANT in California, including any employees staffed with DEFENDANT by a third party, and classified as non-exempt employees (the 'CALIFORNIA CLASS') at any time during the period beginning four (4) years prior to the filing of this Complaint and ending on the date as determined by the Court (the 'CALIFORNIA CLASS PERIOD')." (Complaint ¶¶ 4, 30.)

14. From November 7, 2019 through the present, the hourly-paid or non-exempt employees employed in California by Defendant at any time include approximately 779 employees. (D'Sanchez Decl. ¶ 10a.)

15. Plaintiff also purports to bring this action on behalf of herself and "all members of the CALIFORNIA CLASS who are or previously were employed by DEFENDANT in California, including any employees staffed with DEFENDANT by a third party, and classified as non-exempt employees (the 'CALIFORNIA LABOR SUB-CLASS') at any time during the period three (3) years prior to the filing of the complaint and ending on the date as determined by the Court (the 'CALIFORNIA LABOR SUB-CLASS PERIOD')." (Complaint ¶ 40.)

16. From November 7, 2020 through the present, the hourly-paid or non-exempt employees employed in California by Defendant at any time include approximately 733 employees. (D'Sanchez Decl. ¶ 10d.)

17. Therefore, each of the putative CALIFORNIA CLASS and putative CALIFORNIA LABOR SUB-CLASS that Plaintiff purports to represent consists of at least 100 members.

**C.    The Amount In Controversy Exceeds $5 Million**

18. CAFA further requires that, for the district court to exercise jurisdiction, the matter in controversy must "exceed[] the sum or value of $5,000,000, exclusive of interest and costs". 28 U.S.C. § 1332(d)(2). When determining the amount in controversy, "the claims of the individual class members shall be aggregated". 28 U.S.C. § 1332(d)(6). The U.S. Supreme Court has held that, as specified in 28 U.S.C. § 1446(a), a defendant's notice of removal need include only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold"; the notice need not contain evidentiary submissions. *Dart Cherokee*, 135 S. Ct. at 553.

19. Following *Dart Cherokee*, district courts in California have held that where a removing defendant relies on assumed rates of wage-and-hour violations, the assumed rates are reasonable if they are "sufficiently supported" by the plaintiff's *own allegations* as well as the evidence submitted by the defendant. *See, e.g.*, *Unutoa v. Interstate Hotels & Resorts, Inc.*, 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015); *Oda v. Gucci Am., Inc.*, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015); *see also*

*Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403, at *3 (C.D. Cal. May 9, 2018) ("Defendant may use reasonable assumptions in calculating the amount in controversy for purposes of removal.").

20. This action involves Plaintiff's alleged claims against Defendant for its purported failure to: pay minimum and overtime wages, provide meal periods and pay meal period premiums, provide rest periods and pay rest period premiums, provide accurate wage statements, reimburse business expenses, pay all wages due at the time of separation from employment, pay proper sick pay, as well as unfair competition. Plaintiff, on behalf of the putative class and subclass, asserts that she and the class and subclass are entitled to, among other things, an award of compensatory damages, liquidated damages, penalties, restitution to the class, prejudgment interest on all damages awarded, attorneys' fees and costs, and such other and further relief as the Court deems proper. (Complaint Prayer for Relief.)

21. Defendant denies Plaintiff's claims entirely. But for purposes of removal only, and without conceding that Plaintiff or the putative class members are entitled to or could recover damages in any amount, the Complaint's allegations, theories, and Prayer for Relief place in controversy an aggregate amount in excess of $5 million, exclusive of interest and costs.

    a. Here, Defendant's hourly non-exempt employees in the putative class were regularly scheduled to work at least 8-hour shifts, three to five days a week. (*See* D'Sanchez Decl. ¶ 9.) These hourly non-exempt employees in the putative class earned an average of approximately $32.56 per hour and worked an average of 179 weeks per employee since November 7, 2019. (*Id.* ¶¶ 10b-10c.)

    b. <u>First and Third Causes of Action (Unlawful Business Practice and Unpaid Overtime)</u>. The Complaint alleges that Defendant had "in place company ***policies***, ***practices*** and ***procedures*** that failed to record and pay PLAINTIFF and the other members of the CALIFORNIA CLASS for all time worked, including . . . overtime wages owed" and "as a matter of company ***policy***, ***practice*** and ***procedure***,

. . . DEFENDANT perpetrated this ***scheme*** by refusing to pay PLAINTIFF and the other members of the CALIFORNIA LABOR SUB-CLASS for overtime worked." (*See* Complaint ¶¶ 8-10, 13, 27, 35, 45, 49-63, 78-92 (emph. added).) "Courts in this Circuit have often found a 20% violation rate (one unpaid overtime hour per week) a reasonable and 'conservative estimate' when plaintiff alleges a 'policy and practice' of failing to pay overtime wages." *Sanchez v. Abbott Lab'ys*, 2021 WL 2679057, at *5 (E.D. Cal. June 30, 2021) (finding one hour of unpaid overtime per week reasonable based on "pattern and practice" allegations); *e.g.*, *Cabrera v. South Valley Almond Company, LLC*, 2021 WL 5937585, at *8 (E.D. Cal. Dec. 16, 2021) (finding one hour of unpaid overtime per week "consistent with allegations that violations occurred '***at times***'") (emph. added); *Marquez v. Southwire Company, LLC*, 2021 WL 2042727, at *6 (C.D. Cal. May 21, 2021); *Oda v. Gucci America, Inc.*, 2015 WL 93335, at *4 (C.D. Cal. Jan. 7, 2015). Based on the Complaint's broad "policy," "practice," and "procedure" allegations and Plaintiff's "time to time" modification, assuming one hour of missed overtime per week is reasonable. Here, taking the conservative assumption of only one hour of missed overtime per every two weeks (a 10% violation rate), and assuming 40 actual workweeks in a 52-week year (to account for vacations, holidays, and days off)[1] with only 75% of the putative class effected,[2] the total of unpaid overtime in controversy is approximately **$1,963,668** for the overtime claim (discounted 584 putative class members x 179 workweeks x 40/52 x .5 hour of unpaid overtime x $48.84 [or 1.5 x $32.56 average hourly rate]).

   c. <u>First and Fourth Causes of Action (Unlawful Business Practice and Unpaid Meal Period Premiums)</u>. The Complaint alleges that Defendant failed to provide putative class members with meal periods in violation of California law, and

---

[1] *See Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (40 workweeks a year is a reasonable assumption).
[2] *See Ortega v. ITS Technologies & Logistics, LLC*, 2021 WL 4934978, at *3-4 (finding defendants' discounted assumption "that only 75% of the putative class" suffered violations was reasonable based on violations allegedly suffered by "Plaintiffs and other class members (but not all)").

Plaintiff seeks unpaid meal period premiums of one hour of pay for each missed meal period for herself and the putative class for each instance the required meal periods were not provided. (Complaint ¶¶ 8, 10, 11, 27, 30-39, 44, 45, 49-63, 93-96.) Specifically, the Complaint alleges that Defendant engaged in an unlawful, "***strict corporate policy and practice***" and "***common business practice*** . . . applicable to each and every CALIFORNIA CLASS MEMBER" of "fail[ing] to provide all legally required meal breaks to PLAINTIFF and the other members of the CALIFORNIA CLASS" "from time to time" (*see id.* ¶¶ 11, 33, 35(b), 56, 94 (emph. added), and that "PLAINTIFF demands on behalf of herself and on behalf of each CALIFORNIA CLASS MEMBER, one (1) hour of pay for each workday in which an off-duty meal period was not timely provided for each five (5) hours of work, and/or one (1) hour of pay for each workday in which a second off-duty meal period was not timely provided for each ten (10) hours of work". (*Id.* ¶ 57.)

      d.    Numerous courts in the Ninth Circuit "have found violation rates as high as 60% to be reasonable to calculate the amount in controversy when allegations represent a 'pattern and practice' or 'policy and practice' of" meal period violations. *Zamora v. Penske Truck Leasing Co.*, L.P. 2020 WL 4748460, at *4 (C.D. Cal. Aug. 17, 2020); *e.g.*, *Bryant v. NCR Corporation*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (finding a 60% violation rate was a reasonable and "conservative[]" assumption for missed meal periods based on "policy and practice" allegations); *Elizarraz v. United Rentals, Inc.*, 2019 WL 1553664, at *3-4 (C.D. Cal. Apr. 9, 2019) (finding 50% violation rate for noncompliant meal periods reasonable based on "pattern and practice" allegations); *Oda,* 2015 WL 93335, at *5 (finding a 50% violation rate for noncompliant meal periods reasonable based on "policy or practice" allegations); *Olson v. Beckton, Dickinson and Company*, 2019 WL 4673329, at *5 (S.D. Cal. 2019) (finding 25% violation rate for noncompliant meal periods reasonable based on "pattern and practice" allegations); *Torrez v. Freedom Mortgage, Corp.*, 2017 WL 2713400, at *3-4 (C.D. Cal. June 22, 2017) (finding 40%

violation rate for noncompliant meal periods reasonable based on "pattern and practice" allegations); *Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1189 (9th Cir. 2020) (finding "a violation rate of 40%—a median between 25% and 60%—to be reasonable" based on "pattern and practice" allegations).

        e.    Although Defendant denies any and all liability, conservatively assuming a 20% violation rate (or one missed meal period every week)—which is a reasonable assumption based on Plaintiff's allegations that Defendant engaged in a "***strict corporate policy and practice***" and "***common business practice***" of failing to provide compliant meal periods and pay meal period premiums (Complaint ¶¶ 8, 10, 11, 27, 30-39, 44, 45, 49-63, 93-96 (emph. added)) and the allegation that "DEFENDANT failed to provide all the legally required off-duty meal . . . breaks to PLAINTIFF" and that her claims are "***typical***" and she and the class were "***similarly*** or ***identically*** harmed" (*id.* ¶¶ 27, 36(c) (emph. added))—and again assuming 75% of the putative class suffered violations during 40 actual workweeks in a 52-week year, then the amount in controversy for this claim alone equals, then the amount in controversy for this claim alone equals **$2,618,224** (discounted 584 putative class members x 179 workweeks x 40/52 x 20% violation rate (one meal period violation per week) x 1 hour of premium pay x $32.56 average hourly rate).

        f.    <u>First and Fifth Causes of Action (Unlawful Business Practice and Unpaid Rest Period Premiums)</u>.  The Complaint alleges that Defendant failed to provide putative class members with rest periods in violation of California law, and Plaintiff seeks unpaid rest period premiums of one hour of pay for each missed rest period for herself and the putative class for each instance the required rest periods were not provided.  (Complaint ¶¶ 10, 12, 27, 30-39, 44, 45, 49-63, 97-100.) Specifically, the Complaint alleges that, "as a matter of ***policy*** and ***procedure***" Defendant engaged in an unlawful "***common business practice*** . . . applicable to each and every CALIFORNIA CLASS MEMBER" of "failing to provide the PLAINTIFF and the other members of the CALIFORNIA CLASS with the legally required . . .

rest periods" "from time to time" (*see id.* ¶¶ 33, 35(b), 54 (emph. added), and that "PLAINTIFF further demands on behalf of herself and each member of the CALIFORNIA LABOR SUB-CLASS, one (1) hour of pay for each workday in which an off duty rest period was not timely provided as required by law." (*Id.* ¶ 58.) Further, the Complaint alleges Defendant's "**policy** restricted PLAINTIFF and other CALIFORNIA CLASS Members from unconstrained walks and is unlawful based on DEFENDANT's **rules** which states PLAINTIFF and other CALIFORNIA CLASS Members cannot leave the work premises during their rest period." (*Id.* ¶ 12 (emph. added).)

g. "Courts in the Ninth Circuit have found a 10% to 30% violation rate to be reasonable when the plaintiff claims a 'pattern and practice' of rest period violations." *Sanchez*, 2021 WL 2679057, at *5; *e.g.*, *Bryant*, 284 F. Supp. 3d at 1151 (finding a 30% violation rate was a reasonable and "conservative[]" assumption for missed rest breaks based on "policy and practice" allegations); *Elizarraz*, 2019 WL 1553664, at *3-4 (finding 25% violation rate for missed rest breaks reasonable based on "pattern and practice" allegations); *Oda,* 2015 WL 93335, at *5 (finding a 50% violation rate for missed rest breaks reasonable based on "policy or practice" allegations); *Olson*, 2019 WL 4673329, at *5 (S.D. Cal. 2019) (finding 25% violation rate for missed rest breaks reasonable based on "pattern and practice" allegations); *Torrez*, 2017 WL 2713400, at *3-4 (C.D. Cal. June 22, 2017) (finding 20% violation rate for missed rest breaks reasonable based on "pattern and practice" allegations).

h. Although Defendant denies any and all liability, conservatively assuming a 10% violation rate—which is a reasonable assumption based on Plaintiff's allegations that "as a matter of **policy** and **procedure**", Defendant engaged in an unlawful "**common business practice**" of failing to provide rest breaks and pay rest break premiums (Complaint ¶¶ 10, 12, 27, 30-39, 44, 45, 49-63, 97-100 (emph. added))—and again assuming 75% of the putative class suffered violations during 40 actual workweeks in a 52-week year, then the amount in controversy for this claim

alone equals **$2,618,224** (discounted 584 putative class members x 179 workweeks x 40/52 x 10% violation rate (one rest break violation per week) x 1 hour of premium pay x $32.56 average hourly rate).

   i. <u>Eighth Cause of Action (Failure to Pay Wages When Due, i.e., "Waiting Time Penalties")</u>.  The Complaint further alleges that, as an unlawful "***pattern and practice***, DEFENDANT *regularly* failed to pay PLAINTIFF and other members of the CALIFORNIA CLASS their correct wages and accordingly owe waiting time penalties pursuant to Cal. Lab. Code Section 203." (Complaint ¶ 20 (emph. added); see also .)  The Complaint further alleges that "PLAINTIFF demands ***thirty days of pay*** as penalty for not paying all wages due at time of termination for all employees who terminated employment during the CALIFORNIA LABOR SUB-CLASS PERIOD". (*Id.* ¶ 116 (emph. added).)

   j. Here, 186 hourly non-exempt employees in the putative subclass separated from employment with Defendant, and these employees earned an average of approximately $29.95 per hour.  (D'Sanchez Decl. ¶ 10d.) Although Defendant denies any and all liability, with an average wage of $29.95, and reasonably assuming an 8-hour day for 30 days, this claim alone equals an additional **$1,336,968** (186 former employees x $29.95 average hourly rate x 8-hour day x 30 days).

   k. <u>Conservative Total Amount in Controversy</u>.  Based on the claims and reasonable assumptions described above, the class-wide amount in controversy is conservatively estimated to be at least $8 million, well exceeding the $5 million CAFA threshold.

| Claim | Amount in Controversy |
|---|---|
| Unpaid Overtime | $1,963,668 |
| Unpaid Meal Period Premiums | $2,618,224 |
| Unpaid Rest Period Premiums | $2,618,224 |
| Waiting Time Penalties | $1,336,968 |
| **TOTAL** | **$8,537,084** |

22. The foregoing calculations, which present "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," *Dart Cherokee*, 135 S. Ct. at 553, do not even include Plaintiff's claimed attorneys' fees[3] or class-wide claims alleging a "policy and practice" of unpaid minimum wages, noncompliant wage statements, failure to reimburse business expenses, or failure to provide sick pay—amounts that, if included, would bring the amount in controversy in even greater excess of $5 million.

### III.
### COMPLIANCE WITH REMOVAL STATUTE AND LOCAL RULES

23. The Notice of Removal was filed in the proper venue because the United States District Court for the Southern District of California embraces the Superior Court of the State of California for the County of San Diego, which is the State court where Plaintiff brought this action and where it is pending. 28 U.S.C. §§ 1441(a) & 1446(a); (*see generally* Complaint).

24. The Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure. 28 U.S.C. § 1446(a).

25. The Notice of Removal is timely because it was filed within thirty days after receipt by Defendant, through service or otherwise, of a copy of the Complaint from which it was first named a defendant and first ascertained that the action is one which has become removable. 28 U.S.C. § 1446(b)(3).

26. The Notice of Removal properly disregards Doe defendants. Although Plaintiff has named fictitious defendants "DOES 1 through 50," their consent to federal jurisdiction is not required to effect removal. *See* 28 U.S.C. § 1453(b) ("A class action may be removed to a district court of the United States in accordance with section 1446 . . . except that such action may be removed by any defendant

---

[3] "[W]hen a statute . . . provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019). Plaintiff seeks attorneys' fees for each and every cause of action. (Complaint Prayer for Relief.)

without the consent of all defendants."); *see also Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition).

27. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all additional process, pleadings, and orders served upon Defendant in this action are attached hereto as **Exhibit 4**.

28. Pursuant to Federal Rule of Civil Procedure 7.1 and Local Civil Rule 40.2, Defendant is filing a Corporate Disclosure Statement and a Notice of Party with Financial Interest concurrently with this Notice of Removal.

29. As required by 28 U.S.C. § 1446(d), Defendant is providing written notice of the filing of this Notice of Removal to Plaintiff and is filing a copy of this Notice of Removal with the Clerk of the Superior Court of the State of California for the County of San Diego.

## IV.
## CONCLUSION

30. For the reasons stated above, Defendant respectfully requests that this Court exercise jurisdiction over this action and enter orders and grant relief as may be necessary to secure removal and to prevent further proceedings in this matter in the Superior Court of the State of California for the County of San Diego. Defendant further requests such other relief as the Court deems appropriate.

Dated: February 2, 2024     **BAKER & HOSTETLER LLP**

By: */s/ David H. Stern*
    David H. Stern
    Alex E. Spjute
    Jennifer F. Delarosa

*Attorneys for Defendant*
San Diego Dialysis Services, Inc.

# PROOF OF SERVICE

STATE OF CA           )
                     ) ss.
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 11601 Wilshire Blvd., Suite 1400, Los Angeles, California 90025-0509.

On February 2, 2024, I served the following document(s) described as **DEFENDANT'S NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

| | |
|---|---|
| Norman B. Blumenthal, Esq.<br>Kyle R. Nordrehaug, Esq.<br>Aparajit Bhowmik<br>Nicholas J. De Blouw<br>Piya Mukherjee<br>BLUMENTHAL NORDREHAUG BHOWMIK DE BLOUW LLP<br>2255 Calle Clara<br>La Jolla, CA 92037 | Attorneys for Plaintiff<br>*DEVAN WATSON* |

☑ **BY MAIL:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☑ **BY EMAIL**: by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 2, 2024, at Los Angeles, CA.

*/s/ Diane Pirian*
Diane Pirian
