UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVAN WATSON, an individual, on behalf of herself and all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SAN DIEGO DIALYSIS SERVICES, INC.,<br><br>Defendant. | Case No.: 24cv0228-LL-JLB<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND CASE TO STATE COURT**<br><br>[ECF No. 9] |

Before the Court is Plaintiff Devan Watson's Motion to Remand Case to State Court. ECF No. 9 ("Motion" or "Mot."). Defendant San Diego Dialysis Services, Inc. filed an Opposition to the Motion [ECF No. 15 ("Opposition" or "Oppo.")], and Plaintiff filed a Rely [ECF No. 20 ("Reply")]. The Court finds the matter suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1(d)(1). For the reasons set forth below, the Court **DENIES** the Motion.

**I.   BACKGROUND**

On November 7, 2023, Plaintiff filed a putative class action in state court against her former employer, alleging violations of California wage and hour laws as follows: (1) unfair business practices in violation of California's Unfair Competition Law ("UCL"),

(2) failure to pay minimum wages, (3) unpaid overtime wages, (4) failure to provide meal periods, (5) failure to provide rest periods, (6) failure to provide accurate itemized wage statements, (7) failure to reimburse, (8) failure to timely pay final wages at termination, and (9) failure to pay proper sick pay. ECF No. 1-3.

Plaintiff defines a "California Class" as all individuals who are or were previously employed by Defendant in California, including any employees staffed with Defendant by a third party, and classified as non-exempt employees at any time during the period beginning four years prior to the filing of the complaint and ending on a date to be determined by the Court. *Id.* ¶ 4. The first cause of action—the UCL claim—is on behalf of the California Class, and Plaintiff alleges that the amount in controversy for the aggregate claim is under $5 million. *Id.* ¶ 30.

Plaintiff defines a "California Labor Sub-Class" the same as the California Class—and includes members of the California Class—except that the period of time is for the three years prior to the filing of the complaint and ends on a date to be determined by the Court. *Id.* ¶ 40. Plaintiff brings the remaining causes of action on behalf of the California Labor Sub-Class and claims the amount in controversy for the aggregate claim of the California Labor Sub-Class is under $5 million. *Id.*

On February 2, 2024, Defendant filed a Notice of Removal of this matter to federal court pursuant to 28 U.S.C. § 1332(d) and the requirements of the Class Action Fairness Act of 2005 ("CAFA"). ECF No. 1 at 3.

On March 1, 2024, Plaintiff filed the instant Motion. ECF No. 9. Defendant filed its Opposition on March 22, 2024. ECF No. 15. On March 29, 2024, Plaintiff filed her Reply. ECF No. 20.

## II.   LEGAL STANDARD

"[A] defendant may remove an action filed in state court to federal court if the federal court would have original subject matter jurisdiction over the action." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1243 (9th Cir. 2009). "CAFA gives federal courts jurisdiction over certain class actions, defined in §1332(d)(1), if the class has more than

100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84-85 (2014) (citing 28 U.S.C. § 1332(d)(2), 5(B)).

"[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 89 (citing 28 U.S.C. § 1446(a)). When the plaintiff contests the amount required for CAFA jurisdiction, the defendant has the burden to put forward evidence showing that the amount in controversy is satisfied. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). "Both parties may submit evidence supporting the amount in controversy before the district court rules." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020) (citations omitted). Removal is proper if the court finds, "by the preponderance of the evidence, that the amount in controversy exceeds" $5 million. 28 U.S.C. § 1446(c)(2)(B). "The preponderance of the evidence standard, in practical terms, requires the defendant to provide persuasive evidence that the potential damages *could* exceed the jurisdictional amount, as opposed to requiring a prospective assessment of defendant's liability to any degree of certainty." *Salatino v. Am. Airlines, Inc.*, 719 F. Supp. 3d 1094, 1098–99 (S.D. Cal. 2024) (internal quotation marks omitted) (quoting *Richards v. Now, LLC*, No. 218CV10152SVWMRW, 2019 WL 2026895, at *5 (C.D. Cal. May 8, 2019)). There is no antiremoval presumption of cases invoking CAFA jurisdiction. *Dart Cherokee Basin Operating Co., LLC*, 574 U.S. at 89.

When the amount in controversy is challenged, the removing defendant "bears the burden to show that its estimated amount in controversy relied on reasonable assumptions." *Ibarra*, 775 F.3d at 1199. In doing so, a removing defendant "is permitted to rely on 'a chain of reasoning that includes assumptions.'" *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019) (quoting *Ibarra*, 775 F.3d at 1199). "[T]hose assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Ibarra*, 775 F.3d at 1199. "An assumption may be reasonable if it is founded on the allegations of the complaint." *Arias*, 936 F.3d at 925. An assumption does not need to be proven. *Id.* at 927 (citing *Ibarra*, 775 F.3d at 1199).

## III. DISCUSSION

Plaintiff argues that the case should be remanded because Defendant has not sufficiently supported its claims regarding the amount in controversy.[1] ECF No. 9-1 at 2. Plaintiff makes a factual attack, contending that Defendant's estimation of the amount in controversy in its Notice of Removal is based "on assumptions not grounded in real evidence." *Id.* at 10; *Harris*, 980 F.3d at 700 ("A factual attack, however, need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence."). Specifically, Plaintiff claims that Defendant's calculation of overtime wage exposure, meal and rest break exposure, waiting time penalties, and attorneys' fees is based on unexplained, unsupported, and unreasonable assumptions. *Id.* at 4, 6, 9; Reply at 8–9.

Defendant opposes, arguing that in determining the amount in controversy exceeds the $5 million threshold, it relied on reasonable assumptions grounded in the complaint's allegations. Oppo. at 8. Defendant relies on and incorporates the evidence submitted with its Notice of Removal instead of providing additional evidence. *Id.* at 9.

### A. Meal Breaks

Plaintiff alleges Defendant "from time to time failed to provide all the legally required off-duty meal breaks" to Plaintiff and California Labor Sub-Class members due to Defendant's "strict corporate policy and practice" of failing to have in place a policy or practice to ensure that putative class members are paid as required by law, and that this "common business practice is applicable to each and every" putative class member. ECF No. 1-3 ¶¶ 94, 33. Plaintiff's request for relief is as follows:

> PLAINTIFF demands on behalf of herself and on behalf of each CALIFORNIA CLASS Member, one (1) hour of pay for each workday in which an off-duty meal period was not timely provided for each five (5) hours

---

[1] The parties are not contesting whether the class has more than 100 members or whether the parties are minimally diverse, which are also required for CAFA jurisdiction.

    of work, and/or one (1) hour of pay for each workday in which a second off-duty meal period was not timely provided for each ten (10) hours of work.

*Id.* ¶ 57.

Defendant submitted a declaration from Martha D'Sanchez, Director of Employee Relations for Fresenius Medical Care ("FME"), who attests that she is familiar with the operations of FME and its affiliated corporate entities, including Defendant, and has access to their corporate records. ECF No. 1-6, Declaration of Martha D'Sanchez ("D'Sanchez Decl."), ¶ 3. D'Sanchez reviewed the records and found that between November 7, 2019 and November 7, 2023, Defendant employed at least 779 hourly-paid, non-exempt employees in California who each worked an average number of 179.68 weeks with an average hourly wage of $32.56. *Id.* ¶ 10(a)-(c). D'Sanchez states that these employees generally worked full-time, in either 12-hour shifts three days a week or 8-hour shifts three to five days a week. *Id.* ¶ 9.

Based on Plaintiff's "from time to time" and "policy and practice" allegations regarding meal break violations, Defendant assumed a violation rate of 20%, or one missed meal period every week, incurred by 75% of the putative class, or 584 people. Oppo. at 20–21. Defendant also discounted the average number of weeks worked by assuming people work about 40 actual workweeks in a 52-week year, to account for vacations, holidays, and days off. *Id.* at 21; *see also* ECF No. 1 ¶ 21(b). With a meal break premium of one hour of pay for each day that a meal break was not timely provided, Defendant performed the following calculation to determine the amount in controversy: 584 putative class members x 179 workweeks x (40/52 weeks) x 1 hour of premium pay at an average hourly wage of $32.56 for 1 meal period violation per week, which equals about $2,618,224. Oppo. at 20–21.

Plaintiff argues that its complaint does not support Defendant's arbitrary assumptions, and Defendant has failed to provide evidence supporting its arbitrary assumptions, especially when Defendant has access to payroll and time records to make

/ / /

1  exact calculations, such as addressing whether it provided meal penalties to any employees.
2  Reply at 4–9.
3    The Court finds Defendant's assumptions are reasonably grounded in the allegations
4  of the complaint. "[A]ssumptions made part of the defendant's chain of reasoning need not
5  be proven; they instead must only have 'some reasonable ground underlying them.'" *Arias*,
6  936 F.3d at 927 (quoting *Ibarra*, 775 F.3d at 1199). Defendant's 20% violation rate
7  assumption is reasonable based on Plaintiff's "from time to time" and "policy and practice"
8  allegations in the complaint. *See Ortiz-Dixon v. FedEx Ground Package Sys., Inc.*,
9  No. 523CV01140ODWSPX, 2023 WL 9064893, at *3 (C.D. Cal. Dec. 7, 2023) (finding a
10 20% violation rate assumption to be reasonable where allegations of "from time to time"
11 are coupled with "pattern and practice" allegations in the complaint); *Cavada v. Inter-*
12 *Cont'l Hotels Grp., Inc.*, No. 19CV1675-GPC(BLM), 2019 WL 5677846, at *7 (S.D. Cal.
13 Nov. 1, 2019) (finding "allegations of 'periodically' or 'from time to time' along with
14 broader language of 'pattern and practice' and 'policy and practice' would support a
15 violation rate under 25%"). Contrary to Plaintiff's assertions, Defendant is not required to
16 prove it actually violated the law at the assumed rate. *Arias*, 936 F.3d at 927; *Chavez v.*
17 *Pratt (Robert Mann Packaging), LLC*, No. 19-CV-00719-NC, 2019 WL 1501576, at *3
18 (N.D. Cal. Apr. 5, 2019 ("But [the defendant] is not obligated to research, state, and prove
19 [the plaintiff's] claims." (internal quotation marks and citation omitted)); *Lucas v. Michael*
20 *Kors (USA), Inc.*, No. CV181608MWFMRWX, 2018 WL 2146403, at *7 (C.D. Cal.
21 May 9, 2018) ("Furthermore, Defendant MK is not required to prove Plaintiff's case for
22 her by proving the actual rates of violation at the removal stage."); *Muniz v. Pilot Travel*
23 *Centers LLC*, No. CIV. S-07-0325FCDEFB, 2007 WL 1302504, at *5 (E.D. Cal. May 1,
24 2007) ("There is no obligation by defendant to support removal with production of
25 extensive business records to prove or disprove liability and/or damages with respect to
26 plaintiff or the putative class members at this premature (pre-certification) stage of the
27 litigation."). Therefore, the Court finds Defendant has met its burden regarding the amount
28 in controversy for meal break violations.

### B. Overtime Wages

Plaintiff alleges that Defendant (1) had in place company policies, practices, and procedures that failed to record and pay Plaintiff and California Class members for all time worked, including overtime wages; (2) denied accurate compensation to Plaintiff and California Labor Sub-Class members "as a result of implementing a policy and practice that failed to accurately record overtime worked"; and (3) elected "to not pay employees for their labor as a matter of company policy, practice, and procedure" and then "perpetrated this scheme by refusing to pay . . . for overtime worked." ECF No. 1-3 ¶¶ 35, 84, 90. Plaintiff states that "[s]tate and federal law provides that employees must be paid overtime and meal and rest break premiums at one-and-one-half times their 'regular rate of pay.'" *Id.* ¶ 9.

Based on Plaintiff's "policy and practice" allegations regarding unpaid overtime, Defendant assumed a violation rate of one hour of unpaid overtime per every two weeks, incurred by 75% of the putative class, or 584 people. Oppo. at 20. Defendant also discounted the average number of weeks worked by assuming people work about 40 actual workweeks in a 52-week year, to account for vacations, holidays, and days off. *Id.* at 21; *see also* ECF No. 1 ¶ 21(b). With an overtime premium of 1.5 hours of pay for each hour of unpaid overtime, Defendant performed the following calculation to determine the amount in controversy: 584 putative class members x 179 workweeks x (40/52 weeks) x 0.5 hours of unpaid overtime per week x (1.5 x $32.56 average hourly wage), which equals about $1,963,668. Oppo. at 20.

Plaintiff argues that "Defendant calculates its amount-in-controversy as to the overtime wage claims based on an arbitrary amount without any basis in fact or tying it to work schedules or the electronic time records, to which Defendant has access, and, indeed, presumably reviewed in order to determine much of its other analysis." Reply at 5. Plaintiff further argues that Defendant's assumption of one hour of unpaid overtime per every two weeks "bears no resemblance to Plaintiff's complaint that alleges the Defendant failed 'from time to time' to compensate Plaintiff and Class Members for time spent under

Defendant's control for COVID screenings or during what was supposed to be off-duty meal breaks."[2] *Id.* (citing ECF No. 1-3 ¶ 8).

The Court finds Defendant's assumptions in calculating the amount in controversy as to overtime wage premiums are reasonably grounded in the allegations of the complaint. Defendant's assumption of one hour of unpaid overtime per every two weeks is reasonable based on Plaintiff's "policy and practice" and "from time to time" allegations in the complaint. *See Cabrera v. S. Valley Almond Co., LLC*, No. 121CV00748AWIJLT, 2021 WL 5937585, at *8 (E.D. Cal. Dec. 16, 2021) (finding assumption of one hour of unpaid overtime per week consistent with allegations that violations occurred "at times" or "on occasion" due to "policies and/or practices"); *Mendoza v. Savage Servs. Corp.*, No. 219CV00122RGKMAA, 2019 WL 1260629, at *2 (C.D. Cal. Mar. 19, 2019) ("When a 100% violation rate is not supported by a factual or evidentiary basis, courts in this district have found that a conservative 20% violation rate, or one hour of overtime pay per week, to be reasonable."); *see also Evers v. La-Z-Boy Inc.*, No. 21CV2100-LL-BLM, 2022 WL 2966301, at *5 (S.D. Cal. July 27, 2022) ("District courts in this circuit have found violation rates ranging from 25% to 60% can be reasonably assumed as a matter of law based on [a] 'pattern and practice' or 'policy and practice' allegation."). Although an assumption of one hour of unpaid overtime per week is reasonable, Defendant reduces its assumption rate by half. Additionally, as explained above, Defendant is not required to provide evidence that it violated the law at the assumed rate. *Arias*, 936 F.3d at 927. Thus, the Court finds Defendant has shown by a preponderance of evidence that the amount in controversy as to overtime wage premiums is about $1,963,668.

---

[2] The Court notes that Plaintiff actually alleged that Plaintiff "was from time to time interrupted by work assignments while clocked out for what should have been PLAINTIFF'S off-duty meal break." ECF No. 1-3 ¶ 8. Allegations regarding COVID screenings prior to clocking in for the day were not qualified by the phrase "from time to time" and were instead described as Defendant "engag[ing] in the practice" of requiring the screenings prior to clocking in. *Id.*

### C. Waiting Time Penalties

Plaintiff alleges that "[a]s a pattern and practice, DEFENDANT regularly failed to pay PLAINTIFF and other members of the CALIFORNIA CLASS their correct wages and accordingly owe waiting time penalties pursuant to Cal. Lab. Code Section 203."[3] ECF No. 1-3 ¶ 20. Plaintiff also alleges that Plaintiff and California Labor Sub-Class members are entitled to waiting time penalties. *Id.* ¶¶ 77, 92, 115. As a remedy pursuant to section 203 of the California Labor Code, Plaintiff "demands thirty days of pay as penalty for not paying all wages due at time of termination for all employees who terminated employment during the CALIFORNIA LABOR SUB-CLASS PERIOD." *Id.* ¶¶ 114, 116.

In addition to Defendant's employment data detailed above, Director of Employee Relations Martha D'Sanchez also found that between November 7, 2020 and November 7, 2023, Defendant employed at least 733 hourly-paid, non-exempt employees in California with an average hourly wage of $29.95, and that 186 of these employees no longer work for Defendant. D'Sanchez Decl. ¶ 10(d); *see also supra* Section III.A.

Defendant assumed a 100% violation rate for waiting time penalties because of the broad "pattern and practice" allegations in the complaint coupled with the contention that Defendant "need only have caused and failed to remedy a **single** violation per employee for waiting time penalties to apply." Oppo. at 22 (quoting *Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*, No. EDCV190839DOCSPX, 2019 WL 7987117, at *6 (C.D. Cal. June 21, 2019)). Defendant also assumed that "the vast majority (if not all) of the alleged

---

[3] Section 203 of the California Labor Code states in part the following:
> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.6, 201.8, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

Cal. Lab. Code § 203.

violations over the *four years* at issue in this case would have happened more than 30 days before the suit was filed, which would entitle the employees to the 30-day penalty."[4] *Id.* (quoting *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022)). With the 30-day penalty per employee, Defendant performed the following calculation to determine the amount in controversy: 186 former employees x $29.95 average hourly wage x 8 hours worked per day x 30 days, which equals $1,336,968. *Id.*

Plaintiff argues that Defendant's assumed violation rate of 100% for waiting time penalties is "flawed and remains unsupported" by evidence or by allegations in the complaint, which requests remedies "on behalf of the members of the California Labor Sub-Class whose employment has terminated **and who have not been fully paid their wages due to them**." Reply at 4, 8 (quoting ECF No. 1-3 ¶ 116).

The Court finds Defendant's assumed violation rate of 100% is reasonably grounded in the allegations of the complaint. Although Plaintiff contends that waiting time penalties are sought on behalf of California Labor Sub-Class members who are no longer employed by Defendant *and* who have not been fully paid their wages, this does not necessarily rule out a 100% violation rate. In the complaint, Plaintiff alleges that waiting time penalties are owed if Defendant failed to pay former employees their correct wages. ECF No. 1-3 ¶¶ 20, 77, 92, 115. The complaint also alleges that Defendant had a uniform practice and policy of failing to pay former employees all of their vested vacation time as wages due upon employment termination, and thus underpaid waiting time penalties. *Id.* ¶ 115. Based on these allegations of a "pattern and practice" of regularly failing to pay the correct wages, it is reasonable to assume that each, or nearly all, of the former employees experienced at least one wage violation during the three years at issue and that these violations would have

---

[4] The Court notes that there are actually three years—not four—at issue in this case when considering waiting time penalties. *See* D'Sanchez Decl. ¶10(d); *Lucas*, 2018 WL 2146403, at *9 ("Furthermore, the statute of limitations for a waiting time penalties claim under §§ 201 and 202 is three years.").

happened more than thirty days before the suit was filed. *See Jauregui*, 28 F.4th at 994; *Noriesta*, 2019 WL 7987117, at *6; *see also Cavada*, 2019 WL 5677846, at *9 (finding that "[b]ecause the waiting time penalties are also based on the one missed meal and one missed rest breaks, a 100% violation rate, that each employee suffered at least one violation, is based on a reasonable assumption"); *Chavez*, 2019 WL 1501576, at *4 ("By tying the unpaid final wage claim to his other claims, Chavez makes Pratt's assumption of 100% violation for unpaid wages reasonable—that is, if every putative class member incurred damages for at least one other claim in the complaint, every class member who departed Pratt during the statutory period was due unpaid wages."). Therefore, the Court finds Defendant has supported its amount in controversy calculation as to waiting time penalties by a preponderance of the evidence.

### D.  Amount in Controversy

Summarizing the above, the amount in controversy is as follows: $2,618,224 for meal break premiums, $1,963,668 for overtime wage premiums, and $1,336,968 for waiting time penalties. These add up to $5,918,860, which exceeds CAFA's $5 million requirement.[5]

///
///
///
///
///
///
///
///

---

[5] Because the $5 million minimum requirement has been reached, the Court declines to analyze whether Defendant met its burden in determining the amount in controversy for rest break premiums and attorneys' fees.

## IV. CONCLUSION

For the foregoing reasons, the Court finds Defendant has shown by a preponderance of the evidence that the amount in controversy meets or exceeds the $5 million threshold required by CAFA. Accordingly, the Court **DENIES** Plaintiff's Motion to Remand.

**IT IS SO ORDERED.**

Dated: November 5, 2024

Honorable Linda Lopez
United States District Judge